UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

JUAN A. SANCHEZ-TORRES,

    Plaintiff,

v.                                                Case No. 13-C-0172

DR. SMITH,

    Defendant.

ORDER GRANTING DEFENDANT'S MOTION FOR LEAVE TO FILE ADDITIONAL PROPOSED FINDINGS OF FACT (DOC. 26), GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DOC. 23), AND DISMISSING CASE

Now before the court is defendant Dr. David Smith's motion for summary judgment. Also before the court is defendant's motion seeking leave to file an additional 29 proposed findings of fact more than the limited in Civil Local Rule 56. Defendant cites the need to provide a complete accounting of plaintiff's medical record dating back to 2006, and plaintiff has not objected to the request.

SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Ames v. Home Depot U.S.A., Inc.*, 629 F.3d 665, 668 (7th Cir. 2011). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. A dispute over "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: "(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

## BACKGROUND[1]

Juan A. Sanchez-Torres, plaintiff, is a state prisoner who was confined at Oshkosh Correctional Institution (Oshkosh) at all times relevant to his claims. David Smith, defendant, is a dentist employed at Oshkosh.

Plaintiff entered the Wisconsin Department of Corrections in 2006 and began receiving regular dental care, medication and high blood pressure monitoring.

Smith gave plaintiff a dental examination for the first time on August 24, 2009. He reviewed plaintiff's medical history and learned that plaintiff was allergic to Tylenol and that he had high blood pressure. Smith was informed that plaintiff was taking medications for his high blood pressure and made notes concerning plaintiff's teeth. He

---

[1] The facts are taken from the defendant's proposed finding of fact (Doc. 25), which are deemed incontroverted because plaintiff did not respond to them. See Civil L. R. 56(a)(1)(A) (E.D. Wis.). The court has also included facts plaintiff presented to the court in his affidavit (Doc. 36) and sworn complaint (Doc. 1).

2

determined that plaintiff's oral hygiene was fair, and there was moderate calculus on his teeth. Two bitewing x-rays were taken. Smith diagnosed plaintiff's periodontal condition as AAP III, or moderate periodontitis, thereby indicating that there was an increased destruction of the periodontal structures, with noticeable loss of bone support along with the possibility of an increase in tooth mobility or tooth movement. In such instances, there may be furcation involvement in multi-rooted teeth or exposure of the root divisions to the oral cavity.

On August 24, 2009, after his exam, plaintiff submitted a Dental Service Request form stating he was in need of a filling after the exam. A response to the form was provided on August 25, 2009, indicating that plaintiff had been placed on the routine waiting list.

Plaintiff did not show for his scheduled dental cleaning on September 18, 2009, and the appointment was automatically rescheduled. Dental hygienist Marilyn Irving cleaned plaintiff's teeth, including a gross debridement, on October 14, 2009. At that time, plaintiff's oral hygiene was fair, moderate plaque, light to moderate calculus, moderate stains, and light to moderate bleeding. No x-rays were taken. Periodontal probing indicated moderate periodontal disease. Afterward, plaintiff was scheduled for another cleaning in twelve months.

On February 22, 2010, plaintiff submitted a Dental Service Request form stating that he had two appointments that had been canceled and that he needed dental service. The next day plaintiff received a response indicating he was on the top of the routine list for his filling and that he would be called as soon as dental services had time. There is

no documentation in plaintiff's dental record regarding cancelled dental appointments in August 2009 or February 2010.

Dentist Veronica Smith saw plaintiff on March 1, 2010. Dr. Veronica Smith restored Tooth #12 with a distal-occlucal silver amalgam with a calcium hydroxide (dycal) liner, and restored Tooth #13 with a mexial-occlucal silver amalgam with a calcium hydroxide (dycal) liner. Plaintiff was told that his teeth may be sensitive for six to eight weeks. On March 1, 2010, a Dental Classification Report indicated that plaintiff's active dental treatment was completed and that there were no dental constraints.

Plaintiff submitted another Dental Service Request form on July 21, 2010. An urgent hygiene appointment was scheduled, Smith performed a limited exam, two x-rays were taken and read, and no urgent dental needs were identified. Plaintiff complained of a bad taste, and Smith dispensed sodium chloride and instructed plaintiff to use it to rinse.

On August 19, 2010, Smith examined plaintiff, reviewed plaintiff's medical history, and again noted that plaintiff was allergic to Tylenol and had high blood pressure. Plaintiff's oral hygiene was good; there was only slight calculus on his teeth. Smith observed that plaintiff's periodontal condition was AAP III, moderate periodontitis.

Dental hygienist Michael Comparin conducted a dental exam of plaintiff on September 1, 2010. At that time, plaintiff's oral hygiene was good. He had gingivitis, light plaque, moderate calculus, light stains, and moderate bleeding. The periodontal screening indicated moderate periodontitis. Comparin provided oral hygiene instruction and cleaned plaintiff's teeth. He noted no problems, and plaintiff did well with treatment.

On November 19, 2010, Smith evaluated plaintiff's full mouth radiographs and periodontal evaluation. Plaintiff said that he was brushing his teeth with salt and had

4

moderate, generalized recessing/toothbrush abrasion. Smith advised plaintiff that he should request annual dental examinations and cleanings, and that he should brush with a gentle toothpaste. Smith diagnosed plaintiff with stable periodontal disease, moderate to advanced.

The next notation is May 19, 2011, when plaintiff was seen for hypertension and gout. He denied significant medication side effects and was prescribed a new medication for his hypertension, Lisinopril. Plaintiff's follow up was June 23, 2011, and he revealed that he thought the new medication replaced one of his older medications and had discontinued taking the older medication.

Plaintiff submitted a Dental Service Request form on September 11, 2011. He acknowledged that he had been checked and that x-rays had been taken. However, he referenced his receding gum tissue and belief that some of his molars required new fillings before his release in four years. Plaintiff said he did not believe that his health was up to standards due to the taste of sewer in his molars. He wanted something done to upgrade his health by having dental work done in prison or by sending him to a specialist for a cure. The next day plaintiff received a response stating he had been placed on the routine waiting list.

Smith examined plaintiff on November 10, 2011, and noted that plaintiff needed periodontal maintenance and that a dental exam or cleaning was scheduled.

The Special Needs Committee reviewed plaintiff's request for low bunk, low tier, tray assist, and early meals on November 15, 2011. Each inmate is reviewed by the committee, which includes staff from HSU, security, and non-security. A significant medical condition must exist that clearly indicates that a restriction/special need is

medically necessary. The committee examined plaintiff's request in accordance with policy and determined that he did not meet the criteria for low bunk, low tier, tray assist, and early meals.

On November 30, 2011, plaintiff completed a Health History Update form for Dental Services indicating that there had been a health change since his last update. The change was that he had been having headaches.

Dental hygienist Michael Comparin saw plaintiff for a dental exam and cleaning on November 30, 2011. Comparin noted that plaintiff's oral hygiene was good and that he had light plaque, light to moderate calculus, light to moderate stains, and light bleeding. Two bitewing x-rays were taken, and the periodontal screening indicated that plaintiff had moderate periodontitis. Comparin cleaned plaintiff's teeth and provided oral hygiene instruction. Comparin found no problems and plaintiff indicated that he did not want flouride. Plaintiff's treatment plan called for another dental visit in six months.

Smith also saw plaintiff on November 30, 2011, for a routine dental recall maintenance examination. No significant changes from Smith's previous examination were observed, with the exception that Smith correctly noted that tooth #16 had been extracted.

Comparin saw plaintiff again on May 23, 2012, and cleaned and polished plaintiff's teeth. Comparin indicated that plaintiff's oral hygiene was good and that he had light to moderate plaque, light to moderate calculus, light to moderate stains, and light bleeding. No x-rays were taken and no problems were noted. The periodontal screening revealed moderate periodontitis. Plaintiff said he did not want flouride, but he did well with treatment and was scheduled for a six month recall. Comparin provided oral hygiene instruction,

advised plaintiff not to use whitening toothpaste, and recommended a specific toothpaste available for inmates to purchase from the canteen.

On May 23, 2012, plaintiff submitted a Health Service Request and Copayment Disbursement Authorization form and asked the committee to reconsider his request for early meals. Smith talked with plaintiff on May 29, 2012, about diet and medication times and plaintiff stated that he was having difficulty eating in the time allowed and requested a soft diet. Smith ordered the soft diet for plaintiff starting May 30, 2012. Dental Assistant Cindy Kirchhoff submitted a Modified Diet Order for plaintiff confirming Smith's order.

On July 3, 2012, plaintiff submitted another Health Service Request form indicating that he was missing out on vitamins and protein with his soft diet and asked for another form seeking to supplement his vitamin intake. He received a response on July 4, 2012, advising that an appointment was scheduled for August 2, 2012.

Plaintiff also submitted a Dental Service Request on July 3, 2012, asking for an extension of his soft diet. Smith conducted an oral exam and ordered an extension of plaintiff's soft diet to July 31, 2013. Smith recalls plaintiff stating that the soft diet was helping him improve his intake and that he had submitted a request to the special needs committee to allow him more time to eat.

On August 2, 2012, plaintiff complained that he was not getting his soft diet and that he was not getting enough to eat. Plaintiff requested Ensure because he believed he was losing too much weight. A call was placed to the kitchen, and copies of the soft diet order were resent to the kitchen, plaintiff, and plaintiff's housing unit.

On September 25, 2012, plaintiff submitted a Health Service Request regarding problems with getting the prescribed soft diet from the kitchen and his newly requested

7

kosher diet. Plaintiff received a response on September 27, 2012, informing him that he had an appointment scheduled for October 15, 2012, to review his concerns with a nurse. A copy of the form was sent to the chaplain.

On November 21, 2012, plaintiff completed a Health History for Dental Practice form. Dental hygienist Comparin helped plaintiff complete the form and noted that plaintiff had high blood pressure, gout, as well as back pain and was on a soft Kosher diet. Comparin assessed plaintiff and Smith reviewed the form as part of plaintiff's dental examination that day.

Smith's findings were consistent with the previous recall examination with the exception of two teeth Smith wanted monitored and restored if they progressed. He again diagnosed plaintiff with AAP III, moderate periodontitis. The periodontal probing indicated a slight increase in readings. Smith discussed with Comparin that periodontal scaling and root planing should be completed.

Comparin again cleaned plaintiff's teeth on December 30, 2013. He told plaintiff that each tooth must be replaced or recapped and that the damage to repair is at least $35,000.

During this time period, plaintiff also saw medical professionals fairly regularly regarding gout, hypertension, chest pains, and medications. By November 28, 2012, plaintiff was assessed with hypertension, not controlled, and was administered new blood pressure medications and diet counseling. Smith was not involved in plaintiff's medical care other than dentistry.

DISCUSSION

Defendant Dr. Smith submits that he is entitled to summary judgment on plaintiff's claims. He maintains that plaintiff had not identified a serious medical need and, even if plaintiff had, he was not deliberately indifferent to those needs. Defendant also submits that summary judgment should be granted on plaintiff's state law dental malpractice claim because plaintiff presented no evidence that he breached a duty that resulted in injury or damages. Finally, defendant argues that he is protected by qualified immunity.

In response, plaintiff contends that defendant was deliberately indifferent to his periodontal disease and his high blood pressure. Specifically, plaintiff asserts that defendant breached his duty by canceling appointments, delaying treatment, and not referring plaintiff to a specialist. Plaintiff also submits that he was denied pain medication, his periodontitis should have been treated differently, there is a connection between his periodontitis and his high blood pressure and defendant's failure to treat his periodontitis exacerbated his blood pressure.

A. Deliberate Indifference

To state an Eighth Amendment claim, a prisoner must show that (1) he had a serious medical need, and (2) the defendant was deliberately indifferent to it. *Wynn v. Southward*, 251 F.3d 588, 593 (7th Cir. 2001). Dental care is one of the most important medical needs of inmates. *Id.*; *Board v. Farnham*, 394 F.3d 469, 480 (7th Cir. 2005);

> An objectively serous medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. Deliberate indifference entails more than mere negligence, and requires the prisoner to show that the prison official was subjectively aware of the prisoner's serious medical needs and disregarded an

9

>
> excessive risk that a lack of treatment posed to the prisoner's health or safety from lack of treatment.

*Wynn*, 251 F.3d at 593 (citations and quotations omitted).

Defendant first argues that neither plaintiff's periodontitis nor his high blood pressure constitutes a serious medical need. A medical need is considered sufficiently serious if the inmate's condition "has been diagnosed by a physician as mandating treatment or . . . is so obvious that even a lay person would perceive the need for a doctor's attention." *Roe v. Elyea*, 631 F.3d 843, 857 (7th Cir. 2011). "A medical condition need not be life-threatening to be serious; rather, it could be a condition that would result in further significant injury or unnecessary and wanton infliction of pain if not treated." *Id.* at 857. A broad range of medical conditions may be sufficient to meet the objective prong of a deliberate indifference claim, including a dislocated finger, a hernia, arthritis, heartburn and vomiting, a broken wrist, and minor burns sustained from lying in vomit. *Id.* at 861.

Plaintiff received treatment and follow-up monitoring for each of his conditions. And contrary to defendant's assertion, the record does not support his assertion that plaintiff's periodontitis and high blood pressure were not serious medical needs. Consequently, the next step is to consider whether defendant was deliberately indifferent to plaintiff's medical needs.

Defendant Smith did not treat plaintiff until August 24, 2009, and, thereby, could not be personally involved in any complaints that arose before that date. Additionally, despite plaintiff's unsupported argument that his hypertension and periodontal disease are related, there is no evidence in the record that defendant had anything to do with

10

plaintiff's medical treatment for his high blood pressure. Only a defendant who is personally responsible for depriving the plaintiff of a constitutional right may be held liable under § 1983. *See Grieveson v. Anderson*, 538 F.3d 763, 778 (7th Cir. 2008). Accordingly, the court will consider only Smith's personal involvement with plaintiff's dental care, including his direct treatment of plaintiff, his supervision and review of plaintiff's additional dental treatment, and his involvement in other issues such as plaintiff's requests for a special diet.

Once defendant began treating plaintiff, he saw him regularly for a combination of limited examinations, full examinations and consultations or record reviews after dental cleanings. Defendant participated in plaintiff's care at least nine times in a little over three years. It also appears defendant oversaw and coordinated plaintiff's dental care and his requests for a special diet. Defendant was aware of plaintiff's high blood pressure and the medications he was taking.

Plaintiff contends that defendant failed to monitor his oral health to prevent gum inflammation from becoming a serious disease. However, during his first examination of plaintiff, defendant diagnosed plaintiff with moderate periodontitis. Other than one examination in November 2010, when defendant diagnosed plaintiff with stable periodontal disease, moderate to advance, plaintiff's periodontitis was assessed as moderate on six occasions, three times before November 2010 and three times after. This suggests that the disease did not progress while plaintiff was under defendant's care.

Plaintiff argues that defendant was trying to delay his dental treatment until plaintiff was out of custody. He points out that he made a request to see a specialist, which was

11

denied, but he does not identify the treatment that he was seeking from the specialist other than replace or recap all of his teeth. Plaintiff wanted all of his dental needs taken care of before he was released from custody. Notably, he had not received medical treatment for two years before he was incarcerated.

It was defendant's professional opinion that a specialist was not needed, and plaintiff's one time request to see a specialist was denied. Disagreement with a medical professional about treatment needs does not state a cognizable Eighth Amendment claim under the deliberate indifference standard of *Estelle v. Gamble*, 429 U.S. 97 (1976). *Ciarpaglini v. Saini*, 352 F.3d 328, 331 (7th Cir. 2003). Plaintiff did not submit anything in opposition to defendant's motion for summary judgment from which a jury reasonably could find that defendant's decisions were based on anything other than the sound exercise of professional judgment. *See Sain v. Wood*, 512 F.3d 886, 894-95 (7th Cir. 2011) (explaining that patient's dissatisfaction with course of treatment is not evidence of deliberate indifference).

Plaintiff received regular dental care during his time at Oshkosh. There is nothing before the court that would lead a reasonable jury to conclude defendant was deliberately indifferent to plaintiff's dental health.

B. Dental Negligence

Wisconsin law defines dental negligence as the failure of a dental professional to "exercise that degree of care and skill which is exercised by the average practitioner in the class to which he belongs, acting in the same or similar circumstances." *Sawyer v. Midelfort*, 227 Wis.2d 124, 149, 595 N.W.2d 423, 435 (1999); *Schuster v. Altenberg*, 144 Wis.2d 223, 229, 434 N.W.2d 159, 161-62 (1988). Like all claims for negligence, a claim

12

for dental malpractice includes the following four elements: (1) a breach of (2) a duty owed (3) that results in (4) harm to the plaintiff. *Paul v. Skemp*, 2001 WI 42 ¶ 17, 242 Wis.2d 507, 625 N.W.2d 860 (2001). Thus, to establish a prima facie dental negligence claim, plaintiff must show that defendant failed to use the required degree of skill exercised by an average dentist, plaintiff was harmed and there is a causal connection between defendant's failure and plaintiff's harm. Wis. J-I Civil 1023. Unless the situation is one in which common knowledge affords a basis for finding negligence, malpractice cases require expert testimony to establish the standard of care. *Carney-Hayes v. Nw. Wisconsin Home Care, Inc.*, 2005 WI 118 ¶ 37, 284 Wis.2d 56, 699 N.W.2d 524 (2005).

Plaintiff has presented no expert testimony or other evidence regarding the standard of care that he is due. Plaintiff asks the court to consider dental hygienist Comparin's estimate of the costs to repair his teeth as an expert opinion. However, Comparin has not been qualified as an expert witness, nor could a dental hygienist testify about a dentist's standard of care. Additionally, a rough estimate of the cost to repair or replace all of plaintiff's teeth is not relevant to whether defendant's dental treatments fell below the standard of care owed to plaintiff. Accordingly, defendant is entitled to summary judgment on plaintiff's dental negligence claim.

C. Qualified Immunity

Based on the conclusions above, the court need not consider defendant's arguments regarding qualified immunity. Therefore,

IT IS ORDERED that defendant Dr. David Smith's motion for summary judgment (Doc. 23) is GRANTED.

IT IS FURTHER ORDERED that defendant's motion for additional proposed findings of fact (Doc. 26) is GRANTED.

IT IS FURTHER ORDERED that this case is dismissed.

Dated at Milwaukee, Wisconsin, this 11th day of March, 2015.

BY THE COURT

/s/ C.N. Clevert, Jr.
C.N. CLEVERT, JR.
U.S. District Judge